McMILLIN, C.J.,
Dissenting:
¶ 21. I respectfully dissent. In my view, the ultimate issue before the licensing agency was whether Zachary was, in fact, eligible to be licensed under the “grandfather” provisions of the applicable statute. Whether she wilfully submitted information that incorrectly supported her claim of five years’ previous experience or whether the incorrect information was submitted by mistake, the fact remained that, on the face of her application, she was not eligible to be licensed.
¶22. It seems absurd to me that an applicant for professional licensing can submit an application for a license containing false information vital to the decision process and obtain a license because of the authority’s reliance on that false information, yet, after the authority discovers the falsity of the information, continue to hold the license — -not by demonstrating the accuracy of the information — but by successfully contending that the applicant did not know the false information had been submitted. The purpose for governmental licensing of certain professions is to protect the public from those not qualified under reasonably-established criteria to practice that profession. Zachary, on the basis of information submitted in support of her request for a “grandfathered” license, was not eligible for such a license. It turns the licensing process on its head to suggest that, because the licensing authority did not detect her ineligibility until after the license had been improperly granted, she has the right to maintain the license unless the authority can demonstrate that she purposely intended to deceive.
¶ 23. Alternatively, it is indefensible to permit Zachary to avoid a charge that she “intentionally ... falsified [her] application .... ” simply by her profession of ignorance of the contents of a vital part of her application package. The duty to supply information in support of such a license lies solely with the applicant. Certainly, the applicant ought to be charged with constructive notice of all information submitted to the authority in support of a licensing request, whether or not the particular document passes through the applicant’s hands. At any time it comes to light that material inaccuracies exist in an application file, the applicant (or licensee, if the information is discovered post-issuance) would, in my view, have a duty to correct the inaccurate information. A necessary corollary of that obligation is that the person must bear the consequences that necessarily flow from that correction. For the applicant/licensee to simply ignore the inaccurate information, once it became known, would be to “cooperat[e] in ... [a] material deception in obtaining ... a license ...” within the meaning of Section 73-53-17(c) of the Mississippi Code.
¶ 24. Zachary’s alternative claim that the false information submitted in support of her license request was rendered harmless by her untimely submission of evidence of other employment that she contends would satisfy the experience requirement is likewise without merit. The hearing officer was correct that a disciplinary hearing focusing on the contents of the application package that led to the original licensing decision was not the proper forum to decide that question. The hearing officer concluded that “there [was] no evidence nor any agreement that those entities [other employers] which employed Ms. Zachary qualify as an employer under which one could ‘grandfather.’ ” There is substantial evidence in support of that finding and neither this Court nor the circuit court can properly ignore it on appeal.
¶ 25. The scope of judicial review of an administrative body’s decision is limited. The court may not intercede unless it concludes that the decision was (a) not sup *525 ported by substantial evidence, (b) was arbitrary and capricious, (c) was beyond the power of the agency, or (d) violated a constitutional or statutory right of the affected party. State Tax Comm’n v. Miss.Ala. State Fair, 222 So.2d 664, 666 (Miss.1969). The agency charged by law with the licensing of social workers made a determination that Zachary was not eligible for licensure under the “grandfather” provisions of the licensing statute because she had failed to demonstrate the necessary previous experience.
¶ 26. That decision passes all four aspects of judicial review with flying colors. The decision was supported by the evidence. It was neither arbitrary nor capricious. It was within the specific statutory authority of the agency. As to the final consideration, it seems to me untenable to say that Zachary has a statutory or constitutional right to continue to hold a professional license for which she is plainly ineligible simply because the license had been erroneously issued on the basis of incorrect information.
¶ 27. The circuit judge improperly shifted the inquiry from what was the proper focus of the inquiry, ie., Zachary’s qualification to hold the license, to the largely-irrelevant question of whether the false information that led directly to the issuance of the license was intentionally or unintentionally submitted. The court then proceeded to make the answer to that inquiry outcome-determinative of the dispute. By doing so, the court substantially exceeded its authority, the unfortunate result being that a person plainly not eligible to hold a license was permitted to continue to practice a profession for which, on the record, she simply was not qualified. Given the clear purpose of the various professional licensing schemes, the welfare of the public was not well-served by that decision.
¶ 28. I would reverse the circuit court and reinstate the decision of the administrative agency.
MOORE, J., JOINS THIS SEPARATE WRITTEN OPINION.